## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| TL OF FLORIDA, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 13-2009-LPS |
| | : |
| TEREX CORPORATION, d/b/a | : |
| TEREX CONSTRUCTION AMERICAS, | : |
| | : |
| Defendants. | : |
| | : |

Alyssa Sydni Rothman, OFFIT KURMAN, Wilmington, DE

William M. Garner, Minneapolis, MN

    Attorneys for Plaintiff.

John C. Phillips, Jr. & Lisa C. Mclaughlin, PHILLIPS, GOLDMAN & SPENCE, P.A., Wilmington, DE

    Attorneys for Defendants.

## **MEMORANDUM OPINION**

July 3, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are the Defendant Terex Corporation's ("Terex") Motion to Dismiss for Failure to State a Claim (D.I. 6) and Plaintiff TL of Florida's ("TL") Motion to Amend Complaint (D.I. 10).

## BACKGROUND[1]

### A.     The Parties and the Relevant Agreements

TL is a Florida-based equipment dealership that distributes heavy equipment. (D.I. 1 at ¶ 1) Terex is a Delaware corporation and manufacturer of equipment used in construction and other infrastructure-related activities. (*Id.* at ¶ 6)

In 2008, TL and Terex began discussing a potential business relationship through which TL would become a distributor of Terex construction equipment. (*Id.* at ¶ 9) Those negotiations resulted in a contract that now forms the basis for the present litigation. (*Id.* at ¶ 10)

### 1.     The Distributorship Agreement

In May 2008, TL and Terex entered into a Distributorship Agreement. (*Id.*) It was renewed on April 11, 2011. (*Id.*)

The Distributorship Agreement set forth the various terms and conditions under which TL was to act as a Terex distributor in Florida. (*Id.* at ¶ 9) Sections 3.1(a) and 3.1(e) are at the center of the parties' disputes.

Section 3.1(a) of the Distributorship Agreement requires TL to "promote the sale, lease and use" of Terex equipment and to purchase such products "in at least the amount listed as the

---

[1]The Court takes all well-pleaded factual allegations made by Plaintiff as true, as it must in reviewing the motion to dismiss.

1

Minimum Purchases Amount in Schedule A." (D.I. 7, Ex. B)  Schedule A, in turn, provides for

the quarterly purchase of specific quantities of Terex articulated and rigid frame trucks. (*Id.*)

Section 3.1(e) of the Distributorship Agreement requires TL to "[m]aintain an inventory

of [Terex] Products reasonably sufficient to meet the anticipated short-term demand" for those

products. (*Id.*)

## B.     Events Leading to the Litigation

Pursuant to the Distributorship Agreement, TL purchased an unspecified amount of

equipment from Terex. (D.I. 1 at ¶ 1)  TL soon encountered commercial difficulties as a Terex

distributor, finding that: (1) there was no market for the number of units that the Distributorship

Agreement specified; (2) TL was surrounded by competing dealers authorized to sell Terex parts;

(3) Terex did not select distributors on the basis of demand in the marketplace; and (4) Terex was

in financial distress. (*Id.*)

## C.     The Litigation

TL filed suit against Terex on December 9, 2013. (D.I. 1)  The Complaint asserts four

claims.  Count I alleges that Terex knowingly and fraudulently failed to disclose that there was

no market for the units sold to TL. (*Id*. at ¶¶ 15-19)  Count II alleges that Terex negligently

misrepresented the nature of maintaining a Terex distributorship. (*Id*. at ¶¶ 21-24)  Count III

alleges that Terex committed a violation of the Florida Deceptive and Unfair Trade Practices Act

(FDUTPA) by misrepresenting the market for its products. (*Id*. at ¶¶ 26-27)  Count IV alleges

that Terex exercised its discretion in bad faith in determining the number of units of whole goods

that TL was required to purchase. (*Id*. at ¶¶ 29-31)

Terex filed its Motion to Dismiss on February 27, 2014. (D.I. 6)  In it, Terex argues that

all four claims asserted by TL are barred by the statute of limitations. (D.I. 7 at 11-16) Terex further contends that Count IV fails to state a claim on which relief may be granted, even if the statute of limitations has not expired. (D.I. 7 at 16-19)

In response to Terex's motion, on April 16, 2014 TL filed its Motion to Amend. (D.I. 10) By its motion, TL seeks to file an Amended Complaint that would contain the same four claims as the original Complaint, but would add allegations supporting TL's position that the statute of limitations has not run, due to tolling and actions taken by Terex. (*Id.*)

The parties completed briefing on the motions on June 2, 2014.

## LEGAL STANDARDS

### A.    Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

3

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While heightened fact

pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must

be alleged. *Twombly*, 55 U.S. at 570. At bottom, "[t]he complaint must state enough facts to

raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of

a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir.

2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald

assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal

quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill*

*Energy Resources, Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or

allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B.      Rule 9(b)**

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . a party must

state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally." The purpose of Rule 9(b) is to

provide defendants with notice of the precise nature of the claim against them, not to test the

factual allegations of the claim. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742

F.2d 786, 791 (3d Cir. 1984). Although date, place, and time allegations may fulfill the

requirement of pleading with particularity, these types of allegations are not required to satisfy

Rule 9(b), so long as the circumstances of the alleged fraud are pled sufficiently "to place the

defendants on notice of the precise misconduct with which they are charged, and to safeguard

defendants against spurious charges of immoral and fraudulent behavior." *Id.*

4

## C.   Rule 15(a)

In pertinent part, Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the Court, and factors the Court should consider in exercising its discretion include "undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal citations omitted). An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006).

Delay alone is an insufficient reason to deny leave to amend, but there are grounds to deny amendment if the delay is coupled with either an unwarranted burden on the Court or undue prejudice to the non-moving party (as a result of the amendment). *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). A party may suffer undue prejudice if the proposed amendment causes surprise, results in additional discovery, or adds costs to the litigation in defending against the new facts or theories alleged. *See id.* "Thus, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner. . . . [Moreover,] [t]he issue of prejudice requires that we focus on the hardship to the [non-movant] if the amendment were permitted." *Id.* (internal citations omitted).

5

## DISCUSSION

A.    **Terex's Motion to Dismiss**

   1.    **Statute of Limitations**

The parties agree that TL's Count IV – alleging a breach of the implied covenant of good

faith and fair dealing – is subject to Delaware's three-year statute of limitations, given the

express language of Section 10.3 of the Distributorship Agreement. (*See* D.I. 7, Ex. B; *see*

*also* 10 Del. C. § 8106 (providing three-year statute of limitations for actions founded on a

promise)) The parties dispute, however, which statute of limitations applies to Counts I, II, and

III.[2]

   TL argues that Florida's statute of limitations should govern with regard to Counts I, II

and III. (D.I. 9 at 6) Terex argues that Delaware's borrowing statute requires that Delaware's

statute of limitations govern. (D.I. 7 at 9-10) Under Florida law, the statute of limitations is four

years, while under Delaware law the statute of limitations is three years. *Compare* Fla. Stat.

§§ 95.11(3)(a), (f), (j) (providing four-year statute of limitations for actions founded on

negligence, statutory liability, and fraud) *with* 10 Del. C. § 8106 (providing three-year statute of

limitations for actions founded on promise, statute, or injury unaccompanied by force).

   Further, under Florida law, the statute of limitations begins "running from the time the

facts giving rise to the cause of action were discovered or should have been discovered with the

exercise of due diligence." Fla. Stat. § 95.031(2)(a). This period can be tolled when "fraud

_____

[2] In evaluating Terex's motion to dismiss, the Court will consider the allegations
contained in TL's proposed Amended Complaint. Terex's opposition to the proposed
amendment is based on futility, due to Terex's view that all of TL's claims are barred by the
statute of limitations. Resolution of the statute of limitations issue, therefore, largely drives
resolution of both the motion to dismiss and the motion to amend.

perpetrated upon the injured party places him in ignorance of his right to sue." *Wirt v. Cent. Life Assur., Co.*, 613 So. 2d 478, 479 (Fla. Dist. Ct. App. 1992) (citing *Nardone v. Reynolds*, 333 So.2d 25 (Fla. 1976)). Under Delaware law, the statue of limitations begins running from the time the cause of action accrues. *See* 10 Del. C. § 8106. Generally, "ignorance of the cause of action will not toll the statute [of limitations], absent concealment or fraud, or unless the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act." *Boerger v. Heiman*, 965 A.2d 671, 674 (Del. 2009).

"[A] federal court, sitting in diversity, follows the forum's choice of law rules to determine the applicable statute of limitations." *Ross v. Johns–Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985). Thus, the Court looks to Delaware law for the applicable choice of law rules.

Statutes of limitations were traditionally governed by forum law. In Delaware, however, Delaware's borrowing statute has modified the traditional rule. *See Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 494 (3d Cir. 1992). The Delaware borrowing statute applies when a non-resident plaintiff files an action in Delaware for claims arising outside of Delaware. *See id.*; *see also* 10 Del. C. § 8121.

Specifically, the Delaware borrowing statute provides:

> Where a cause of action arises outside of this state, an action cannot be brought in a court of this State to enforce such a cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. § 8121.

TL argues that the Court should not apply Delaware's borrowing statute literally. (D.I. 9

7

at 4) TL contends that the borrowing statute only applies to prevent litigants from "attempting to

file in [Delaware] to take advantage of a longer limitations period." (*Id.*) According to TL,

because Delaware's statute of limitations is not longer than Florida's limitations period, the

borrowing statute does not apply. (*Id.*)

For this analysis, TL relies on the Delaware Supreme Court's decision in *Saudi Basic*

*Indus. Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1 (Del. 2005). In *Saudi Basic*, the

plaintiff strategically chose Delaware as its forum with the knowledge that Delaware's statute of

limitations would bar the defendant's counterclaim. *See id.* at 17. The defendant argued that the

shorter Delaware statute of limitations should not be applied because the defendant's

counterclaim was still valid in the state where the claim had arisen. *See id.* The Court agreed

with the defendant, concluding that a "literal construction of the borrowing statute . . . would

subvert the statute's underlying purpose." *Id.* at 16.

Here, unlike in *Saudi Basic*, a literal construction of the borrowing statute would not

subvert the statute's underlying purpose. Unlike in *Saudi Basic*, application of the borrowing

statute here does not unfairly prejudice a party other than the party that chose to file suit here in

Delaware. While the situation here may not present the circumstances with which Delaware was

most concerned when it adopted its borrowing statute – as the Court is not confronted with a

party that has brought its case to Delaware for the purpose of benefitting from Delaware's longer

statute of limitations – it remains the fact that the literal language of Delaware's borrowing

statute makes it applicable to the circumstances presented here.[3]

---

[3]Plaintiff's citation to this Court's decision in *Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 679 (D. Del. 2012), is unavailing. *Grynberg* involved forum shopping. *See id.* It did not hold, however, that Delaware's borrowing statute only applies where

8

Under the Delaware borrowing statute, the Court must apply the shorter of the Delaware statute of limitations and the statute of limitations of the place where Plaintiff's causes of action accrued. Thus, the Court will next address where Plaintiff's causes of action accrued.

Delaware conflict of law rules direct that the Court determine where a plaintiff's claims arose by application of the "most significant relationship" test, as set forth in the *Restatement (Second) Conflict of Laws* ("Restatement") §§ 145 and 188 (1971). *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). Under § 188, the rights and duties of the parties are determined by the local law of the state with the most significant relationship to the transaction and to the parties, based on the following considerations: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, or place of incorporation and place of business of the parties. *See Restatement* § 188. When deciding a choice of law issue, "Delaware courts place considerable emphasis on the place where the injury occurred and the place where the conduct causing the injury occurred." *Travelers*, 594 A.2d at 47.

The parties agree that Florida is both the place of the alleged injury and the place where the conduct causing the injury occurred. The Court concludes that Florida has the most significant relationship to the transaction at issue and is the place where the causes of action asserted here accrued. Therefore, pursuant to Delaware's borrowing statute, the Court must apply the shorter of Florida's or Delaware's statute of limitations. As already noted, Delaware's statute of limitations is three years, while Florida's is four years, so the Court will apply

---

there is evidence of forum shopping. *See Huffington v. T.C. Group, LLC*, 2012 WL 1415930, at *9 (Del. Super. Ct. Apr. 18, 2012) ("*Saudi Basic* did not create a broad rule banning the use of the borrowing statute in all situations except for the 'typical' scenario.").

Delaware's three-year statute of limitations. Accordingly, the causes of action asserted by TL are time-barred if the limitations period had run for more than three years prior to the filing of the Complaint.

TL argues that while some of the conduct on which its claims are based occurred more than three years before the filing of its lawsuit, the statute of limitations was tolled for at least some of that time, due to Delaware's "discovery rule" and doctrine of fraudulent concealment. (D.I. 9 at 8)[4] Under narrow circumstances, Delaware's statute of limitations will be tolled. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). Tolling may occur where there is fraudulent concealment, inherently unknowable injury, or equitable tolling. *See Krahmer v. Christie's Inc.*, 903 A.2d 773, 781 (Del. Ch. 2006). "Each of these doctrines permits tolling of the limitations period where the facts underlying a claim were so hidden that a reasonable plaintiff could not timely discover them." *Id.* Under the "discovery rule" the statute of limitations is tolled when the injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." *Wal-Mart Stores*, 860 A.2d at 319. If the rule is applicable, the statute of limitations will begin to run "upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Id.* A claim of fraudulent concealment requires an "affirmative misrepresentation" by the defendant and will toll the relevant statute of limitations only until "the plaintiff discovers his rights or could have discovered his right[s] by the exercise of reasonable diligence." *Estate of*

---

[4]Given that the Court has applied Delaware's borrowing statute, it follows that Delaware's tolling rules also apply. *See Frombach v. Gilbert Associates, Inc.*, 236 A.2d 363, 366 (Del. 1967).

10

*Miller ex rel. Miller v. Hudson*, 528 F. App'x 238, 240 (3d Cir. June 13, 2013).

TL contends that Terex affirmatively represented that competing distributors of Terex products in TL's market would be "shut down." (D.I. 10-2 at ¶ 13)  TL further asserts that as a result of its reliance on Terex's statements, TL was "precluded" from discovering the injury of which it now complains. (*Id.* at ¶¶ 13,15,19)  Terex responds that the nature of Terex's alleged misrepresentations and the continued presence of competing Terex dealers were easily discoverable by TL. (D.I. 14 at 3, 5)  Further, Terex emphasizes that the express terms of the Distributorship Agreement refer to TL as a non-exclusive dealer of Terex products. (*Id.* at 10-11)  Given these express terms, as well as electronic mail messages exchanged between the parties between 2008 and 2010, in Terex's view TL had inquiry notice of Terex's alleged misrepresentations as early as May 12, 2008. (*Id.* at 13)

Frequently, determining whether the statute of limitations has been tolled pursuant to the "discovery rule" or due to fraudulent concealment requires a factual inquiry not amenable to resolution on a motion to dismiss. *See Wal-Mart Stores*, 860 A.2d at 321 (stating pleaded facts "create a reasonable inference that [plaintiff] was blamelessly ignorant of the wrongful acts . . . [as well as] reasonable inferences to the contrary.  A Rule 12(b)(6) motion . . . is not a proper procedural vehicle to resolve conflicting inferences of fact.").

In *Di Biase v. A & D*, 351 A.2d 865, 868 (Del. Super. Ct. 1976), in assessing whether a plaintiff's reliance on a defendant's misrepresentations would properly toll the statute of limitations for fraudulent misrepresentation, the Delaware Superior Court considered whether: (1) plaintiff's training in the particular industry would allow it to recognize the harm present; (2) in requesting that the defendant remedy the harm, and believing assurances allegedly made by

11

the defendant that the harm was remedied, did plaintiff exercise "reasonable diligence;" (3) should plaintiff have consulted an independent expert on the matter; and (4) did the defendant actually assure plaintiff that the harm was remedied, and if so, did the defendant intend to mislead the plaintiff. The court concluded that "these questions . . . should be resolved by the trier of fact before the applicability of the statute of limitations . . . can be ascertained," and accordingly denied defendant's motion for summary judgment. *Id.*

Here, the Court cannot determine at this stage of the proceedings whether TL knew, or should have known, of Terex's alleged misrepresentation more than three years before filing suit; i.e., before December 9, 2010. It is unclear from the pleadings whether TL exercised reasonable diligence in relying on Terex's alleged representations that competing dealers would be "shut down," and, as such, when TL might have discovered that Terex's alleged representations were false. (D.I. 10-2 at ¶¶ 13,15,19)

Accordingly, the Court concludes that it cannot grant Terex's motion to dismiss based on statute of limitations grounds. The Court further concludes that TL's proposed Amended Complaint would not be futile.

## 2.    Implied Covenant of Good Faith and Fair Dealing

Under Delaware law, every contract contains an implied covenant of good faith and fair dealing, requiring the parties to the contract "to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract." *HSMY, Inc. v. Getty Petroleum Mktg., Inc.*, 417 F. Supp. 2d 617, 621 (D. Del. 2006) (internal citation omitted); *see also Restatement (Second) of Contracts*, § 205 (1981). Delaware courts have consistently held that obligations based on the covenant of good faith and fair dealing

12

should be implied only in rare instances. *See Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1259 (Del. 2004); *see also Rizzitielo v. McDonald's Corp.*, 868 A.2d 825, 831 (Del. 2005) ("[T]he implied covenant is to be narrowly construed. . . .").

In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege: "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Anderson v. Wachovia Mtg. Corp.*, 497 F. Supp. 2d 572, 581–82 (D. Del. 2007). It must be "clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith, had they thought to negotiate with respect to the matter." *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1032–33 (Del. Ch. 2006).

TL alleges that Terex breached the implied covenant of good faith and fair dealing by acting in bad faith in its exercise of discretion to determine the number of units of Terex equipment TL had to buy pursuant to the Distributorship Agreement. (D.I. 10-2 at ¶ 37) However, as Terex points out, the number of units TL was required to purchase was specifically and expressly agreed upon by the parties in Schedule A of the Distributorship Agreement. (D.I. 7 Ex. B) The Distributorship Agreement does not expressly impose an obligation on Terex to sell to TL only the amount of units that would be optimal for TL. The Court is unconvinced that the parties would have agreed to impose such an obligation on Terex had they directly considered the issue. Thus, the Court will grant Terex's motion to dismiss Count IV. (D.I. 6)

**B.    TL's Motion to Amend**

TL seeks leave to file an Amended Complaint that would add allegations relating to TL's

13

contention that the statute of limitations was tolled due to the "discovery rule" and Terex's

fraudulent concealment. (D.I. 10) Terex's opposition to TL's motion is based on Terex's view

that even the amended allegations are inadequate to overcome Terex's statute of limitations

defense, making the proposed amendment futile. (D.I. 14) For reasons already explained in

connection with Terex's motion to dismiss, the Court disagrees with Terex. Accordingly, in the

interests of justice, the Court will grant TL's motion for leave to amend its complaint.[5]

## CONCLUSION

For the reasons stated above, the Court will grant TL's motion to amend (D.I. 10), deny

Terex's motion to dismiss based on statute of limitations, and grant Terex's motion to dismiss

Count IV due to failure to state a claim on which relief may be granted (D.I. 6). An appropriate

Order follows.

---

[5]Rule 15.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware requires a party who moves to amend a pleading attach to the motion the proposed pleading as amended, as well as a form of the amended pleading which indicates in what respect it differs from the pleading which it amends, by bracketing or striking through materials to be deleted and underlining materials to be added. Plaintiff did not meet this obligation, making it more difficult for the Court to identify the proposed amendments. While this failing gives the Court a basis to deny the motion to amend, the Court has chosen to exercise its discretion and permit the amendment nonetheless.

14