UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TL OF FLORIDA, INC., :
　　　　　Plaintiff, :
　　　　　v. : C.A. No. 13-2009-LPS
TEREX CORPORATION, d/b/a TEREX :
CONSTRUCTION AMERICAS, :
　　　　　Defendant :

---

Alyssa S. Rothman, Esquire, OFFIT KURMAN, Wilmington, DE

W. Michael Garner, Esquire, GARNER & GINSBURG, P.A., Minneapolis, MN

　　Attorneys for Plaintiff TL of Florida, Inc.

John C. Phillips, Jr., Esquire, Lisa C. McLaughlin, Esquire, PHILLIPS GOLDMAN & SPENCE, P.A., Wilmington, DE

　　Attorneys for Defendant Terex Corporation

---

## MEMORANDUM OPINION

September 24, 2015
Wilmington, Delaware

[signature]
**STARK, U.S. District Judge:**

Pending before the Court is Defendant Terex Corporation's (hereinafter "Terex" or "Defendant") Combined Motion for Both Summary Judgment and Judgment on the Pleadings (D.I. 36) as well as Terex's Motion to Stay Discovery Pending the Resolution of Defendant's Dispositive Motion, or, In the Alternative, to Bifurcate Discovery (D.I. 35).

## I. BACKGROUND

In or about 2008, Terex, a Delaware corporation, approached Plaintiff TL of Florida, Inc. (hereinafter "TL" or "Plaintiff"), a Florida corporation, about becoming a Terex distributor.[1] (D.I. 20 at ¶ 9) In presenting the opportunity, Terex represented that there was a market for Terex heavy equipment in Southern Florida and provided TL a Distributorship Agreement. (*Id.*) During the discussions preceding the signing of the Distributorship Agreement, Terex allegedly misrepresented or failed to disclose four sets of facts that TL alleges would have been material to TL's decision to enter into the Distributorship Agreement. (*Id.* at 11) First is the "Equipment Market Representation," whereby Terex misrepresented that there was a market for Terex heavy equipment in Southern Florida. (*Id.* at ¶¶ 1, 11) Second is the "Parts Market Representation," whereby Terex misrepresented that there was a market for Terex parts in Southern Florida. (*Id.*) Third are the "Dealership Selection Representations," whereby Terex failed to disclose that it "did not select distributors on the basis of demand in the marketplace or quality of the distributor[,] [but] [i]nstead, it would give a distributorship agreement to any person who asked for it and had the financial ability to purchase whole goods," and further that "Terex was in financial distress and had embarked upon a practice of signing up distributors and obligating

---

[1]This summary takes as true the facts alleged by Plaintiff in the Amended Complaint.

1

them to purchase whole goods without regard to the demand in [the] marketplace or the ability of the distributor to market the products. (*Id.* at ¶ 11) Fourth are the "Dealer Representations and Omissions," whereby Terex failed to disclose that TL "was surrounded by dealers in authorized Terex parts who could sell those parts to customers without having to maintain the inventory of whole goods or infrastructure that Plaintiff was required to maintain. As a result of not having to maintain an inventory of whole goods, these dealers could undersell TL in the substantial and lucrative parts market." (*Id.*) TL alleges that if it had known all of these facts, it would not have entered into the Distributorship Agreement. (*Id.* at ¶ 12)

In 2008, TL discovered that Terex's website and other websites listed authorized Terex dealers near TL's facility. (*Id.* at ¶ 13) When it confronted Terex about this, Terex represented that these were not current dealers and that their listing on the website was a mistake. (*Id.*) In 2010, TL discovered shipments of Terex parts on a Federal Express truck bound for other dealers in the area. (*Id.* at ¶ 14) TL alleges that Terex continued to represent that there were no authorized dealers within close proximity to TL. (*Id.* at ¶ 15) TL further alleges that it did not discover that any of Terex's representations were false until May 2012, based on an interaction with the President of third-party Minequip Corporation. (*Id.* at ¶¶ 17-18)

TL filed the instant suit on December 9, 2013, alleging fraudulent non-disclosure, negligent misrepresentation, violation of the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA"), and breach of the implied covenant of good faith and fair dealing. (D.I. 1) On July 3, 2014, the Court granted in part Terex's motion to dismiss for failure to state in claim, dismissing TL's claim for violation of the implied covenant of good faith and fair dealing; the Court also granted TL's motion for leave to amend the complaint. (D.I. 18; D.I. 19) TL filed its

amended complaint on July 11, 2014. (D.I. 20)[2] Terex filed the pending motions on February 11, 2015 and briefing on them was completed on March 12. (D.I. 35; D.I. 36; D.I. 44)

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

---

[2]The amended complaint included identical allegations related to the breach of the implied covenant of good faith and fair dealing (*compare* D.I. 1 at ¶¶ 28-31 *with* D.I. 20 at ¶¶ 35-38), although Plaintiff recognizes that this claim is no longer in the case (*see* D.I. 42 at 3).

3

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal citation omitted). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson,* 477 U.S. at 252.

**B.  Motion for Judgment on the Pleadings**

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See*

*Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.*; *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). This is the same standard as a Rule 12(b)(6) motion to dismiss. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents that are integral to pleadings may be considered in connection with Rule 12(c) motion).

### III. DISCUSSION

#### A. Motion for Summary Judgment

Terex argues that all of TL's causes of action based on the Equipment Market Representations and Dealership Selection Representations are barred by the statute of limitations.[3] (D.I. 37 at 7) As the Court outlined in its earlier Memorandum Opinion, Delaware's three-year statute of limitations applies, such that the claims are time-barred if they accrued three years prior to the filing of the complaint, i.e., before December 9, 2010. *See TL,*

---

[3]Defendant argues for the first time in its reply brief that the causes of action based on the Parts Market Representations are also barred because the Complaint never alleges that these statements were false, and thus, it fails to state a claim upon which relief can be granted. (D.I. 44 at 5-6) New arguments may not be raised in a reply brief, *see* D. Del. L.R. 7.1.3(c)(2), and accordingly, the Court will not consider this argument here. *See McKesson Automation, Inc. v. Swisslog Italia S.p.A.*, 840 F. Supp. 2d 801, 803 n.2 (D. Del. 2012).

5

2014 WL 3362367, at *5. An exception may apply due to the "discovery rule" and/or fraudulent concealment. *See id.* Under the discovery rule and the doctrine of fraudulent concealment, the statute of limitations will begin to run "upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 219 (Del. 2004); *see also Krahmer v. Christie's Inc.*, 903 A.2d 773, 778-79 (Del. Ch. 2006).

Terex argues that TL's claims based on the Equipment Market Representations and Dealership Selection Representations are barred because of interrogatory responses, in which TL explained when it first became aware that the market would not support the number of purchases required by the Distributorship Agreement. This interrogatory response states:

> At a meeting at TL's office in Florida in or around June 2009, Ernie Ferguson told TL that Terex's Florida market share for whole goods had been in decline prior to the time that Terex entered into the distributor agreement with TL in 2008. Mr. Ferguson also informed TL that the sale of thirty Terex articulated dump trucks to Triple EEE, Inc., which had been used by Terex as an example of the health of the whole good market in Southern Florida, was actually a fluke in the market in Terex's favor temporarily. Mr. Ferguson told TL that Terex knew at the time that it sold the dealership to TL that there was no market for whole goods in Southern Florida that nearly approached the number of purchases required in the Distributorship Agreement. Instead, Mr. Ferguson represented that Terex was aware that the market had already turned south at the time. He confirmed this by showing TL UCC filings for the years prior to 2009, which Terex uses to track its market share in any given year.

(D.I. 37, ex. 3 at 6)

In its briefing, TL does not contend that its claims based on the Equipment Market

Representation are timely, but instead focuses on the Dealership Selection Representations and the Parts Market Representations. (D.I. 42 at 5-6) In reply, Terex emphasizes the Dealership Selection Representations. (D.I. 44 at 2-5) Terex does not address the statute of limitations with respect to the Parts Market Representations. Thus, based on the parties' arguments, it is undisputed that TL's claims based on the Equipment Market Representation are untimely, and it is undisputed at this stage that the claims based on the Parts Market Representations are timely. The disputed issue is whether the claims based on the Dealership Selection Representations are barred by the statute of limitations.

TL's interrogatory response does not bar TL's claims based on the Dealership Selection Representations. The statement from Mr. Ferguson described in the interrogatory response (D.I. 37, ex. 3 at 6) does not discuss Terex's distributor selection criteria, Terex's alleged financial distress, or how that financial distress affected Terex's selection of distributors. (*See* D.I. 20 at ¶ 11) Although Terex argues that these allegations are a repackaging of the Equipment Market Representation (*see* D.I. 40 at 3-5), the Court is not persuaded. The Equipment Market Representation relates to the market for Terex equipment, whereas the Dealership Selection Representations relate to Terex's financial situation and how Terex selected dealers for its equipment. Although these may be related, they do not overlap to such an extent that the bar on the claims based on the Equipment Market Representation should also apply to the claims based on the Dealership Selection Representations.

The Court will deny Terex's motion for summary judgment on TL's counterclaims except to the extent those counterclaims are based on the time-barred Equipment Market Representation.

## B. Motion for Judgment on the Pleadings

Terex argues that the claims based on the Dealer Representations and Omissions are barred as a matter of law because they are expressly contradicted in, or adequately covered by, the Dealership Agreement between TL and Terex. (D.I. 37 at 12-18) TL responds that these provisions do not contradict or address the allegations of misrepresentations, and, even if they do, reliance is an issue of fact under Florida law that cannot be resolved at this stage. (D.I. 42 at 6-14)

The Dealer Representations and Omissions, as alleged in the complaint, are that Terex failed to tell TL that TL "was surrounded by dealers in authorized Terex parts who could sell those parts to customers without having to maintain the inventory of whole goods or infrastructure that Plaintiff was required to maintain. As a result of not having to maintain an inventory of whole goods, these dealers could undersell TL in the substantial and lucrative parts market." (D.I. 20 at ¶ 11)

Terex argues that sections 2.1 and 10.1 of the Dealership Agreement contradict or adequately address these representations. Section 2.1 states:

> Subject to the terms and conditions of this Agreement, Supplier hereby appoints Distributor as a non-exclusive distributor of Supplier's Products in the Territory described in **Schedule A** attached hereto (the "**Territory**") during the initial term of this Agreement described in **Schedule A** attached hereto (the "**Term**"). Distributor hereby accepts said non-exclusive appointment, and agrees to use its best efforts to maximize sales and leases of the Products in its Territory. Distributor hereby accepts responsibility for stocking, display, sale, lease, delivery, installation, follow-up and service of Products in the Territory. Distributor acknowledges and agrees that Supplier is free to sell, rent, lease or otherwise convey Products within the Territory, and to appoint other distributors for the Products within the Territory, without incurring

8

>any liability or obligation to the Distributor, whether for a
>commission or otherwise.

(D.I. 37, ex. 2 at 1)

Section 10.1 is a merger clause and states:

>This Agreement, together with the standard Terms and
>Conditions, the Security Agreement and the schedules and
>attachments hereto and thereto, constitutes the entire agreement
>between Distributor and Supplier, superseding all prior oral and
>written agreements, policies or understandings, on the subject of
>the continuing relationship between Distributor and Supplier and,
>except as otherwise provided herein, may be amended only by a
>writing signed by both parties hereto. No failure of Supplier to
>insist upon strict compliance with any provision of this Agreement
>shall constitute waiver thereof for the future, and all provisions
>herein shall remain in full force and effect. The construction and
>interpretation of this Agreement will not be strictly construed
>against the drafter.

(*Id.* at 8)

Under Florida law, a party to a contract may not press fraud claims contradicted by or adequately addressed in a subsequent agreement. *See Altenel, Inc. v. Millenium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1369 (S.D. Fla. 2013). Some Florida courts have held that a claim may be barred where a contract contains a merger clause, *see Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007), while others have disagreed and held that such a clause does not bar a claim based on an oral representation which is alleged to have fraudulently induced a party to enter into the contract, *see Mejia v. Jurich*, 781 So.2d 1175, 1178 (Fla. Dist. Ct. App. 2001). In considering whether a merger clause bars a fraudulent inducement claim, Florida courts perform a case-by-case analysis and look to see if the merger clause expressly and specifically addresses the misrepresentations upon which the claims are based. *See Hobirn, Inc.*

*v. Aerotek, Inc.*, 787 F. Supp. 2d 1298, 1304 (S.D. Fla. 2011).

Terex is not entitled to judgment on the pleadings because sections 2.1 and 10.1 neither contradict nor adequately address the Dealer Representations and Omissions. Although Section 2.1 speaks to Terex's ability to appoint other distributors in the future (*see* D.I. 37, ex. 2 at 1), it does not address the existence of other distributors at the time TL entered into the Distributorship Agreement, or the terms of prior agreements between Terex and other distributors. Section 2.1, then, does not address the facts at issue in the alleged Dealer Representations and Omissions, and, thus, does not bar a fraudulent inducement claim based on those alleged misrepresentations and omissions. Likewise, Section 10.1 does not address any of the alleged misrepresentations at issue in the Dealer Representations and Omissions. It is simply a generic merger clause, which does not specifically address these representations and omissions and, thus, does not bar TL's claims. *See Hobirn*, 787 F. Supp. 2d at 1304.

Accordingly, the Court will deny Terex's motion for judgment on the pleadings.

### C. Motion to Stay or In the Alternative to Bifurcate Discovery

Terex's requests for a stay and to bifurcate discovery are moot. The resolution of the motion for summary judgment and judgment on the pleadings moots Terex's request for a stay pending resolution of that motion, and the Court's scheduling order mooted the request to bifurcate discovery. In the scheduling order, the Court declined to adopt Terex's proposal to bifurcate discovery on liability and damages (*see* D.I. 45 at 1-2), and the Court will not revisit that decision here.

## IV. CONCLUSION

For the reasons set forth below, Defendant's Motion for Both Summary Judgment and Judgment on the Pleadings is granted in part, and Defendant's Motion to Stay or, in the Alternative, to Bifurcate Discovery is denied as moot.